IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STATE NATIONAL INSURANCE
COMPANY, a/s/o N140DA, LLC, et al.

      Plaintiffs,

v.                                                    Case No. 17-1077-JWB

TEXTRON AVIATION, INC., et al.,

      Defendants.

**MEMORANDUM AND ORDER**

This case comes before the court on Defendant TAT Technologies' ("TAT's") motion to dismiss for lack of personal jurisdiction. (Doc. 55). The motion has been fully briefed and is ripe for decision. (Docs. 61, 65). TAT's motion is DENIED for the reasons set forth herein.

**I.    Procedural History and Relevant Facts**

Plaintiff State National Insurance Company ("SNIC") filed this action as subrogee of N140DA, LLC. (Doc. 5 at 1.) N140DA is also a named Plaintiff in this action.[1] The case was originally filed in the Northern District of Oklahoma against Textron, Limco Airepair[2] and TAT. Prior to service on TAT, SNIC and Textron agreed to transfer the case to this district. (Doc. 27.)

The amended complaint was filed while the case was pending in Oklahoma. TAT moved to dismiss the amended complaint on the basis that this court lacks personal jurisdiction over TAT. (Doc. 42.) The court agreed that the amended complaint failed to sufficiently allege facts that would provide jurisdiction over TAT in Kansas. (Doc. 52.) Because SNIC indicated in briefing that there were additional facts not raised in the amended complaint that may give rise to

---

[1] N140DA was added to this action in the Second Amended Complaint.
[2] Limco has been dismissed from this action by stipulation. (Doc. 26.)

jurisdiction, the court allowed SNIC to amend. SNIC and N140DA (hereinafter Plaintiffs) have now filed a second amended complaint ("SAC"). (Doc. 53.)

The SAC alleges that TAT is a foreign company with its principal place of business in Israel. Limco is a wholly owned United States subsidiary corporation. Plaintiffs allege that TAT is in the business of designing, manufacturing, marketing, selling, assembling and/or distributing component parts for aircrafts. TAT and/or Limco allegedly market, advertise, distribute and sell components to aircraft owners and manufacturers in Kansas. TAT submitted an affidavit regarding its business practices in connection with its initial motion to dismiss. (Doc. 42, Exh. 1.) TAT cites to the affidavit in support of the instant motion to dismiss. The affidavit states that TAT is not licensed in Kansas, does not manufacture any products in Kansas, does not maintain a registered agent or office in Kansas, does not advertise or solicit business in Kansas and does not have any property in Kansas. (*Id.*) Textron is incorporated in Kansas and has its principal place of business in Kansas. Plaintiffs further allege that venue is proper in Kansas because a substantial part of events or omissions giving rise to Plaintiffs' claims occurred in Kansas.

Plaintiffs have alleged product liability claims due to an alleged failure of a heat exchanger ("precooler") that was installed on a Citation Model 525A, serial number 525A140 ("the aircraft") by Textron. N140DA is the owner of the aircraft. The aircraft was manufactured and sold in Wichita, Kansas by Textron. Plaintiffs allege that the precooler was designed and manufactured by TAT. TAT "marketed, sold, distributed and shipped" the precooler to Textron in Kansas for use in manufacturing the aircraft.[3] (Doc. 53 at 4.) Texron then incorporated the precooler into the aircraft prior to sale. TAT has not had any interaction with ND140DA.

---

[3] The SAC alleges that either TAT or Limco sold the precooler to Textron. TAT has submitted an affidavit attached to its reply brief in which TAT states that Limco did not sell the precooler to Textron. (Doc. 65, Exh. A.) TAT does not contend, at this stage of the proceedings, that it did not manufacture or sell the precooler to Textron.

2

On December 9, 2014, there were significant damages to the aircraft, due to the failure of the precooler. SNIC paid for the costs to repair the aircraft. Plaintiffs bring this action to recover their damages, including damages due to N140DA's loss of use of the aircraft. Plaintiffs allege that the precooler was defective and bring claims of strict liability, failure to warn, breach of warranty and negligence. TAT again moves to dismiss on the basis that it is not subject to personal jurisdiction in Kansas.

## II.     Analysis

TAT moves to dismiss the amended complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). On a Rule 12(b)(2) motion to dismiss, a plaintiff must make a prima facie showing that the court has personal jurisdiction over defendants. *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). The court must accept the allegations in the SAC as true and resolve all factual disputes in Plaintiffs' favor notwithstanding contrary positions by TAT. *Id.*

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *TH Agriculture & Nutrition, LLC v. Ace European Group, Ltd.*, 488 F.3d 1282, 1286-87 (10th Cir. 2007). Because the Kansas long-arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process, the court ordinarily proceeds directly to the constitutional issue. *Id.* at 1287 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1087 (10th Cir. 1998)). "Consequently, this court need not conduct a statutory analysis apart from the due process analysis." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985). Therefore a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1979). The requisite minimum contacts may be established under one of two theories: "specific jurisdiction" or "general jurisdiction." If the requisite minimum contacts are met, the court proceeds to determine whether the "assertion of personal jurisdiction would comport with fair play and substantial justice." *Old Republic Ins. Co.*, 877 F.3d at 903.

Plaintiffs contend that the SAC establishes specific jurisdiction in this matter. (Doc. 61 at 5.) Specific jurisdiction applies when the suit arises out of or relates to a defendant's contacts with the forum state. *Monge v. RG Petro-Machinery (Grp.) Co. Ltd.*, 701 F.3d 598, 613 (10th Cir. 2012). To satisfy specific jurisdiction, Plaintiffs' injury "must arise out of or relate to activities that [defendants] purposefully directed at residents of the forum." *Id.* at 617. Plaintiffs argue that this action arises out of TAT's contacts with Kansas because TAT "sold the precoolers to a Kansas manufacturer for purposes of them being incorporated into aircrafts manufactured and sold in Kansas." (Doc. 61 at 5.)

TAT argues in its motion that Plaintiffs' SAC does not establish jurisdiction in that the only connection with Kansas is the fact that TAT sells precoolers to Textron in Kansas. TAT claims that its relationship with Textron and Texron's activities are "of no consequence to the determination of whether personal jurisdiction properly lies." (Doc. 55 at 10.) TAT also emphasizes that it had no interaction with N140DA, it does not have any operations in Kansas, does not maintain an office in Kansas, does not advertise or solicit business in Kansas and has no

assets or accounts in Kansas. TAT does not dispute, however, that it sold the precooler to Textron in Kansas and that the precooler was then installed on the aircraft purchased by N140DA in Kansas. Moreover, TAT does not dispute that it sells and distributes its products to manufacturers and aircraft owners in Kansas.

A finding of specific jurisdiction is based on the facts in a particular case. *See Old Republic Ins. Co.*, 877 F.3d at 903 ("specific (case-linked) jurisdiction"). TAT cites to *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017), in support of its position that its activities in Kansas, that are unconnected with the underlying suit, are insufficient for a court to maintain personal jurisdiction. TAT quotes the following:

> The mere fact that other plaintiffs were prescribed, obtained and ingested Plavix in California does not allow the State to assert specific jurisdiction over nonresidents' claims. Nor is it sufficient (or relevant) that [Bristol-Myers] conducted research in California on matters unrelated to Plavix. What is needed is a connection between the forum and the specific claims at issue. *Cf. Walden v. Fiore*, 134 S. Ct. 1115 (2014).
>
> *Bristol-Myers Squibb*, 137 S. Ct. at 1776.

(Doc. 55 at 9.)

The notable difference between *Bristol-Myers* and this case, however, is that TAT's activities in Kansas are directly related to Plaintiffs' claims. In *Bristol-Myers*, more than 600 plaintiffs filed an action against Bristol-Myers Squibb ("BMS") in California, alleging that Plavix, a medication manufactured and sold by BMS, damaged their health. *Bristol-Myers Squibb*, 137 S. Ct. at 1778. The plaintiffs were comprised of residents of California and 33 other states. The California Supreme Court found that the court had personal jurisdiction over BMS on all claims due to BMS's contacts with the residents of California and the similarity of the claims of the non-residents. *Id.* at 1778-79. The United States Supreme Court reversed the finding of personal jurisdiction as to the non-residents' claims.

The Court explained that a defendant's relationship with a third party - there the residents of California who purchased Plavix in California - could not be the basis for personal jurisdiction over the claims of nonresidents of California when they "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Bristol-Myers Squibb*, 137 S. Ct. at 1781. What was missing was the "connection between the form and the [nonresidents'] claims at issue." *Id.* In this case, TAT allegedly sells and distributes precoolers to customers in Kansas. Specifically, TAT allegedly sold the precooler at issue to Textron in Kansas. That precooler was installed on the aircraft that was sold in Kansas and suffered damages due to the allegedly defective precooler. TAT's relationship with Textron in Kansas is therefore directly related to the claims at issue in this case, unlike the relationship between BMS and the non-resident plaintiffs in *Bristol-Myers*.

TAT further argues that specific jurisdiction cannot be had because all acts - the manufacture of the precooler and damages to the aircraft - occurred outside of Kansas. Those were not all of the relevant acts, however, as discussed above. TAT sold and distributed the precooler to Textron knowing that Textron would install it on an aircraft. TAT need not be involved in the final sale for TAT to have purposefully directed its actions toward Kansas. Purposeful availment may exist if a foreign manufacturer "purposefully directed actions toward the forum," or was otherwise actively "'aware that the final product is being marketed in the forum State.'" *Monge v. RG Petro-Machinery*, 701 F.3d 598, 619 (10th Cir. 2012) (quoting *Asahi Metal Industry v. Superior Court*, 480 U.S. 102, 117 (1987)).

In *Federal Insurance Company v. TAT*, Judge Lungstrum found that specific jurisdiction had been established after TAT sold and shipped a precooler to Textron in Kansas and Textron manufactured the aircraft in Kansas. No. 16-2755-JWL, 2017 WL 5970827 (D. Kan. Dec. 1,

2017); *see also TAT*, No. 16-2755-JWL, (Doc. 54, Order Denying Motion for Reconsideration) ("In the present case as well, defendant shipped its (allegedly defective) part into Kansas for use there (use in the manufacture of an airplane). As the Court explained in its prior order, in this case defendant did not merely have contact with a forum resident (the airplane manufacturer), but it also had contact with the forum itself when it knowingly and intentionally shipped its part to Kansas, and the claims at issue arose directly from that contact.") This case has very similar facts. In both cases, parts were shipped to Kansas and installed in planes in Kansas that were sold to the plaintiffs, who were not Kansas residents. As in this case, Judge Lungstrum held that the defendant's contacts with the state subjected it to personal jurisdiction. Contrary to TAT's argument, there is not an additional requirement that the defendant directly sell the defective part to the plaintiff.

"Where the defendant deliberately has engaged in significant activities within a State, ... he manifestly has availed himself of the privilege of conducting business there." *Old Republic Ins. Co.*, 877 F.3d at 905 (quoting *Burger King*, 471 U.S. at 475). TAT shipped its allegedly defective product to Kansas knowing that it would be installed in an aircraft. This was not an isolated event. Based on the allegations in the SAC, TAT sells and distributes its products to manufacturers and aircraft owners in Kansas. As such, TAT has purposefully directed its activities at Kansas. *See World-Wide Volkswagen Corp.*, 444 U.S. at 297–98 ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."); *see also Fed. Ins. Co*., 2017 WL 5970827, at *3.

TAT further argues that this action does not arise out of its contacts with Kansas. The court disagrees. Plaintiffs' injury "must arise out of or relate to activities that [defendants] purposefully

7

directed at residents of the forum." *Monge*, 701 F.3d at 613. Again, TAT allegedly manufactured a defective product, sold that product to Textron in Kansas to be installed in the aircraft, and that aircraft was sold in Kansas. The aircraft then suffered damages due to the defective product. Plaintiffs' injuries thus relate to TAT's activities that were directed at Kansas. *See Fed. Ins. Co.*, 2017 WL 5970827, at *3.

Because the court determined that Plaintiffs met their burden of showing minimum contacts, the court now must "inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1080 (10th Cir. 2008). TAT has the burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* In making the inquiry, the court reviews "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies." *Id.* None of the parties have addressed these factors.

As TAT has the burden and has not established a "compelling case," the court finds that jurisdiction would not be unreasonable in this case. *See Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1164 (10th Cir. 2010).

### III. SAC Joinder of N140DA

As discussed previously, SNIC was granted permission to amend in order to add facts pertaining to jurisdiction. In addition to providing additional jurisdictional facts, SNIC joined N140DA as a plaintiff to this action. Pursuant to Rule 15(a)(2), Plaintiff must obtain leave to amend or written consent of Defendants in order to amend its pleading. Although the court granted

leave to amend, leave was granted in order to allow SNIC to add jurisdictional facts. SNIC did not seek leave to amend to add a party or additional claims. (*See* Doc. 50 at 5.) Moreover, the SAC fails to identify the citizenship of the members of N140DA as required to determine diversity of citizenship. *See Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015) ("Like every other circuit to consider this question, this court concludes an LLC, as an unincorporated association, takes the citizenship of all its members.")

Because SNIC did not seek leave to add a party to this action, the court strikes the addition of N140DA without prejudice to SNIC filing a proper motion to amend that includes appropriate allegations regarding the citizenship of N140DA.

**IV. Conclusion**

TAT's motion to dismiss is DENIED. (Doc.55.) The clerk's office is instructed to remove N140DA as a Plaintiff from this action.

IT IS SO ORDERED this 29th day of August, 2018.

            __s/ John W. Broomes_____
            JOHN W. BROOMES
            UNITED STATES DISTRICT JUDGE